UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JOHN POULTER | ) | |
|---|---|---|
| v. | ) ) ) | No. 12 C 01071 |
| COTTRELL, INC. | ) | Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION**

In this personal injury action removed from Illinois state court, the plaintiff asserts claims of strict product liability, negligence, and breach of implied warranty against the manufacturer of an auto hauling rig from which he fell in January 2011. Among other things, Poulter alleges that that the rig was defective in that it lacked reasonably safe walkways, footings, and "tractions," and was not equipped with adequate handholds, guardrails, or "other feasible fall protection devices." At the time of his accident, the plaintiff was working for Cassens Transport Company in Louisville, Kentucky, and was a member of a collective bargaining unit represented by the International Brotherhood of Teamsters.

Defendant Cottrell moves to dismiss Poulter's complaint, arguing that Section 301 of the Labor Management Relations Act, 28 U.S.C. § 185(a),[1] completely preempts Poulter's claims because they are substantially dependent on the interpretation of the collective bargaining agreement ("CBA") between the Teamsters and Cassens. Cottrell points in particular to provisions in the CBA that, it says, directly imposes the only safety standards governing the rigs

---

[1] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

1

(regardless of who manufacturers them), to the exclusion of any common law or statutory standards. Specifically, in Article 6, section 1, the employer agrees "that all conditions of employment relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the minimum standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved whenever specific provisions for improvement are made elsewhere in this Agreement." Cottrell says that among the relevant provisions "elsewhere in the agreement" is Article 30, section 8, which provides that a joint committee of the employer and the union "shall . . . review safety considerations relating to proper steps, handholds, [and] catwalks . . . and shall further review safety considerations relating to feasibility of handrails and cables on headrack ramps, swing decks and upper decks of tractors and trailers." Furthermore, Cottrell posits that because union members are required to file grievances relating to "unsafe workplace conditions," decisions on such grievances, which are binding upon the employer and the union members under Article 30, section 2(b)(6), provide the only "law of the shop" governing safety standards.

Citing these provisions, Cottrell contends that Poulter's union bargained for standards for the rigs, and "agreed to forego certain state-law claims" in exchange for "uniform enforceability of their agreement." Br., Dkt. # 43 at 3. Allowing an injured worker to litigate tort claims against the manufacturer—which is not a party to the CBA—would, according to Cottrell, impermissibly intrude upon federal labor law because the CBA, not state law, provides the "agreed-to standard of care for all CBA rigs." *See id*. at 2.

Cottrell has made the same argument in at least sixteen prior cases involving similar tort claims, including others by employees of Cassens. As Poulter notes in his brief, and as Cottrell concedes, no court has accepted Cottrell's theory of preemption. Undeterred, Cottrell insists that

a more recent LMRA preemption case, *Duerson v. NFL, Inc.*, No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. 2012) (Holderman, J.), changes the preemption landscape and compels a different result this time. Cottrell concedes that its argument about the effect of *Duerson* also has been rejected, *see Hernandez v. Cottrell*, No. 10 C 1522, 2012 WL 4009696 (N.D. Ill. 2012) (Dow, J.), but insists that the analysis in *Hernandez*, despite its ultimate conclusion that there was no preemption, compels a finding of preemption in this case.

Cottrell is wrong. Nothing in *Duerson*, *Hernandez*, or the Supreme Court's recent decision in *Kurns v. R.R. Friction Products Corp.*, 132 S .Ct. 1261, 1264 (2012), a non-LMRA case that Cottrell also submitted as supplemental authority, changes the essential framework for analyzing LMRA preemption, and none of these cases suggests that preemption should be found here. Preemption occurs only when resolution of the claim requires interpretation of the collective bargaining agreement, and in this case, there is little need to refer to the agreement, let alone to parse its meaning, in addressing the injured plaintiff's claim against the manufacturer of the equipment.

### A.  The motion is converted to a summary judgment motion under Rule 56(d).

Poulter urges the Court to deny the motion to dismiss on the grounds that it does not attack his pleading, but rather sets forth a substantive defense predicated on extrinsic evidence, such as the collective bargaining agreement and Poulter's deposition testimony, that is not mentioned or alluded to in the complaint. Poulter contends that this is a summary judgment motion in disguise but does not comport with the procedural requirements for such a motion. In reply, Cottrell argues that its motion should be addressed "as filed" and considered in the style of a "failure to exhaust grievance procedures or a forum motion."

Cottrell's motion is not properly brought under Rule 12(b)(6) as it is not directed at the insufficiency of the pleadings, but on its affirmative defense of preemption. Both parties attach and rely upon material outside the complaint in making their arguments—although, apart from the CBA itself, the relevance of most of these hundreds of pages of material remains unclear. Because the Court does consider the CBA, however, the motion must be treated as one for summary judgment. See Fed. R. Civ. P. 56(d). Poulter has responded to the motion on the merits, submitted its own evidence, and has not suggested that any additional discovery is needed in order to oppose the motion. And the parties' submissions reveal no disputes of fact that are material to the question of preemption—a purely legal issue. Accordingly, both sides have had an adequate opportunity to submit the materials on which they seek to rely, and neither side will be prejudiced by the Court's conversion of the motion into one for summary judgment even without prior notice. *See generally Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 885-86 (7th Cir. 2005); *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 626-27 (7th Cir. 2003).

**B. The LMRA does not preempt the state-law claims against the manufacturer.**

Because § 301 "not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion a body of federal law for the enforcement of" those agreements, state law is preempted by § 301 "in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990). Section 301 preempts not only contract claims but also tort claims "if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement." *Rawson*, 495 U.S. at 369; *see In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001) (*en*

*banc*) ("What has become clear is that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA."). However, "the Supreme Court has often cautioned that 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.'" *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283 at 286 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

One factor to consider when preemption is asserted is whether the controversy is between employee and employer, as is most often the case when § 301 preemption is an issue," or whether it is asserted by a third party. *Id*. at 287. A third party's defense of the federal labor policy underlying preemption can "turn[] the policy behind federal labor laws on its head," when what that third party is really arguing is that it should benefit, at a plaintiff-employee's expense, from the employee's collective bargaining agreement with his employer. *See id*.

Another consideration is the nature of the state-law right the plaintiff seeks to vindicate. If that right exists independently of any labor agreement—if it would apply equally to unionized and non-unionized workers—then section 301 does not preempt the claim. *See id*. at 288. That is, "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994); *Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 407 (1988).

These factors clearly carry great weight, but the Court agrees with Judge Dow's analysis in *Hernandez* that whether the defendant is party to the CBA and whether the right in question was created by state law are not alone dispositive. See 2012 WL 4009696, at * 2-3. Indeed, the Seventh Circuit has made plain that the courts must examine all relevant facts and decide on a

case-by-case basis whether a claim is preempted. *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283 at 289.

Here, however, Cottrell concedes that Poulter asserts claims seeking to vindicate rights that are not created by the CBA, and that the CBA does not impose any duties on Cottrell, a non-party to the agreement. Although the Court agrees that these factors need not be dispositive, they weigh heavily in Poulter's favor ,and Cottrell does not set forth others that weigh in favor of preemption. Instead, Cottrell makes the unpersuasive argument that CBA—which does not itself set forth particular specifications for equipment—nevertheless provides the only minimum safety standards that apply to the rigs and grasps at immaterial differences between this case and the many others in which its preemption arguments have failed.

In particular, Cottrell insists that the reasoning of *Hernandez* compels a finding of preemption here. Leaving aside the fact that this Court is not bound by *Hernandez*, the case does not help Cottrell. In *Hernandez,* an auto rig worker sued the manufacturer on a products liability theory for injuries he sustained as a result of operating the system of chains designed by the manufacturer. *See* 2012 WL 4009696, at *1. The collective bargaining agreement between the union and the employer (Cassens Transport Company, as in this case), did not require chains or tie-down bars on the rigs, but it provided that safety problems with such equipment would be reviewed by a joint committee, and workers were obligated to file grievances related to unsafe working conditions. *Id.* Although the court concluded that it was not dispositive that the manufacturer was not a party to the CBA and that the right at issue (to be free from unreasonably dangerous products) was independent of the CBA, the Court nonetheless held the state law claims were not preempted. *Id.* at *2–3. The court reasoned that resolution of the claims did not *require* interpretation of the CBA; the fact that the CBA may be consulted did not mean that the

6

claims were preempted, and no interest in uniformity was implicated. *Id.* at *3.

Cottrell says that applying the same analysis in this case would yield a different result because Hernandez was a "chain claim," and this case pertains to "fall prevention": in other words, the two plaintiff-employees complain about different safety features (or lack thereof). According to Cottrell, the "interplay" of Articles 6 and 30 of the CBA require the conclusion that the CBA does not require the "improvement" of "fall protection" on the relevant equipment, because grievances are essentially the common law of labor agreements, and here a 2004 fall-protection grievance filed pursuant to the CBA was dismissed.

The Court is not persuaded that the factual distinction Cottrell draws has any bearing on the question of preemption. Whether the CBA requires *Cassen* to provide equipment with certain features does not speak to whether Cottrell's product was reasonably safe for the end users according to state-law duties imposed on manufacturers. Cottrell's argument that state law controls only "duty" while the CBA supplies the common-law "degree of care" does not persuade the Court otherwise. It might be true that the CBA is relevant to the degree of care, which is a fact-specific inquiry into what is reasonable under the circumstances. But preemption does not occur simply because determining liability entails referring to the CBA. The Seventh Circuit has made clear that "the overriding principle is that for preemption to apply, *interpretation* of the CBA and not simply a reference to it is required." *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283 at 289 (emphasis in original). Cottrell itself insists that there is only one possible meaning of the CBA as it pertains to equipment safety.

Cottrell's reliance on the NFL helmet cases also is misplaced. *See, e.g., Duerson* 2012 WL 1658353; *Stringer v. NFL, Inc.*, 474 F. Supp.2d 894 (S.D. Ohio 2007). As Judge Dow aptly noted in *Hernandez*, that claims against the NFL, as employer, were preempted does not help

7

Cottrell, which is similarly situated not to the NFL, but to the helmet manufacturer, as to which neither case found preemption. Cottrell says that this distinction should not matter because "it is the subject matter of the lawsuit, not party status, that controls preemption." That uncontroversial proposition fails to illuminate how the NFL cases support a preemption argument as to Cottrell. The fact that the CBA in this case provides for bargaining over safety standards, whereas the NFL CBA did not set forth equipment safety standards, does not help Cottrell, because Cottrell has not made any showing that it is bound by the CBA. (Indeed, it would be surprising for Cottrell to allow a third party contract to bind it to certain safety standards). At any rate, Cottrell drastically overstates the extent to which the CBA here sets forth safety standards for the rigs; providing for bargaining and committee review on the subject of equipment safety is not the same as setting forth specifications.

Finally, Cottrell's reliance on *Kurns v. R.R. Friction Products Corp.*, 132 S. Ct. 1261, 1264 (2012), which it submitted as supplemental authority, does nothing to bolster its case for preemption. In *Kurns*, the Supreme Court held that the Locomotive Inspection Act preempted the state-law products liability claims brought by a former railroad employee and his wife against the manufacturers of asbestos brake pads and of engine valves containing asbestos. Its argument is difficult to follow, but Cottrell appears to contend that for purposes of this case, the CBA—the "private law of the parties"—sets forth the full extent of any safety obligations regarding the rigs, just as the LIA sets forth the extent of safety regulations on locomotive equipment. But the Court does not read *Kurns* to hold that in all cases that an employer's duty with respect to the purchase of safe equipment to be used by its workers is coextensive with, or indeed the outer limit of, the manufacturer's duty to equipment that is reasonably safe for an end user. *Kurns* turned on the fact that the Supreme Court had long ago held that "Congress, in enacting the LIA, 'manifest[ed]

8

the intention to occupy the entire field of regulating locomotive equipment,' and the Court did not distinguish between hazards arising from repair and maintenance as opposed to those *arising from use on the line.*" 132 S. Ct. at 1267-68 (quoting *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 (1926)). Equating the LIA's comprehensive legislative scheme, complete with extraordinarily comprehensive regulations, with a CBA between private parties, is a stretch. In essence, Cottrell asks the Court to conclude that the CBA covers the entire field of worker safety at Cassen, although it can point to only a few paragraphs of that agreement that address the subject at all. The Court cannot agree with that view, nor with Cottrell's assertion that it would be "contrary to *Kurns*" for there to be "a state-law restriction on the manufacturer it has sued but not on his employer using the product." The decision that there is no preemption here does not turn only on Cottrell's "party identity," but on the overarching question whether resolving the plaintiff's claims requires *interpreting* the collective bargaining agreement. It does not.

* * *

Cottrell's motion to dismiss based on LMRA preemption is denied.

Entered: July 9, 2013

John J. Tharp, Jr.
United States District Judge